UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                :
CHRIS REMINDER, et al.,                         :         CASE NO. 5:04-cv-02581
                                                :
                Plaintiffs,                     :
                                                :
vs.                                             :         OPINION & MEMORANDUM
                                                :         [Resolving Doc. Nos. 37, 48]
ROADWAY EXPRESS, Inc.                           :
                                                :
                Defendant.                      :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        On December 30, 2004, Plaintiffs Chris Reminder, Dave Campanale, Dave Nowakowski,

and Mark Shelton, sued Defendant Roadway Express, Inc. ("Roadway").  Plaintiffs' amended

complaint asserts four claims for relief. [Doc. No. 6].  The first alleges employment discrimination

on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§§ 621 et seq., and the Ohio Civil Rights Act, Ohio Rev. Code § 4112.02.  The second claim alleges

disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et

seq., and the Ohio Civil Rights Act.  Finally, the third and fourth claims allege alternatively that the

defendant violated the Employee Retirement Income Security Act ("ERISA") or breached a quasi-

contractual relationship by offering smaller severance packages to the plaintiffs than had been

offered to others.

        On August 8, 2005, Defendant Roadway moved for summary judgment on all of Plaintiffs'

claims. [Doc. No. 37].  The plaintiffs oppose this motion.  With their motion, Roadway essentially

Case No. 5:04-cv-02581
Gwin, J.

alleges that it engaged in a reduction in force culminating in the termination of the plaintiffs'
positions.   The defendant maintains that neither age nor disability played any role in the
terminations.  The defendant further maintains that it offered the plaintiffs the severance benefits
according to Roadway's severance policy and that the plaintiffs had no right to receive larger
severance packages.

In addition to moving for summary judgment, the defendant also moves the Court to exclude
the expert testimony and report of Plaintiffs' witness, Richard P. Steiner, PhD.  [Doc. No. 48].  For
the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the defendant's motion
for summary judgment.  The Court also **DENIES** the defendant's motion to exclude the testimony
and report of Dr. Steiner.

## BACKGROUND

The present case centers around Defendant Roadway's termination of the plaintiffs during
a reorganization and reduction in force that occurred in September 2003.  Roadway, a wholly-owned
subsidiary of Yellow Roadway Corp., is a freight carrier company based in Akron, Ohio.   At the
time of the restructuring, all of the plaintiffs worked at the corporate headquarters, otherwise
referred to as the Akron, Ohio general office ("AGO").   Plaintiffs Reminder, Shelton, and
Campanale held salaried, management level positions in the marketing department.   Plaintiff
Nowakowski held a similar position in the sales department.

I.      The Reorganization and Reduction in Force

Early in 2003, Roadway began negotiating a merger or acquisition with Yellow Roadway.
During the negotiations, Roadway explored several avenues to better facilitate the merger, including
restructuring the marketing and sales departments.  The plaintiffs say that the defendant's plan was

-2-

Case No. 5:04-cv-02581
Gwin, J.

essentially to make itself appear a more attractive merger target by reducing the average age of management in both departments. The defendant, on the other hand, says that its goal was to improve tactical support and efficiency between the marketing and sales departments. It also sought to align these departments in such a way as to provide better support to Roadway's regional sales divisions.[1]

According to the defendant, Roadway's president asked Craig Tallman, the Vice President of Sales, to investigate the possibility of restructuring the marketing department. Tallman then enlisted Sarah Drazetic,[2] a Project Manager, and James Ferguson,[3] a District Sales Manager, to examine the structure of the department. The defendant claims Tallman asked Ferguson to assist Drazetic due to his background in field sales and his past experience working with the marketing department.

Together, Drazetic and Ferguson formulated a plan to improve the department's alignment and support functions in relation to the AGO and regional sales divisions. The defendant claims that to accomplish this task, they reviewed all job descriptions for the department, examined organizational lines of authority and responsibility, and conducted informal interviews. They say they also consulted academic and trade publications as well as an academic from Ohio State

---

[1] At that time, Roadway had four regional operating divisions, each of which was further divided into districts. Roadway's regional sales divisions include the sales management and field salespersons operating at the district and regional levels.

[2] Drazetic was housed in Roadway's Organizational Development Department. Her responsibilities included analyzing the effectiveness of operational structures within the company. Drazetic claims to have worked with many people in the marketing department prior to 2003, including Campanale and Reminder. However, she had only worked briefly with Plaintiff Reminder and could not remember the projects she had worked on with Plaintiff Campanale. *See* Drazetic Dep. 75:5-77:11, Sept. 7, 2005.

[3] Sometime prior to his promotion to District Sales Manager, Ferguson worked as a marketing analyst within the marketing department at Roadway's corporate headquarters. As a District Sales Manager, Ferguson also allegedly interacted extensively with the marketing department personnel.

Case No. 5:04-cv-02581
Gwin, J.

University, albeit briefly, about market strategy.

Drazetic and Ferguson determined to combine various positions and streamline the workforce. Essentially, they sought to reduce both the number of divisions and positions within the marketing department in order to centralize the points of contact and straighten lines of communication with the field sales divisions.  Therefore, based on their research and Ferguson's field sales experience, Drazetic and Ferguson isolated the marketing functions that they believed should be retained in the restructured environment versus those that could be eliminated.

Once Drazetic and Ferguson developed a plan and obtained Tallman's approval, they compared the then-current marketing positions and corresponding job functions with the functions they had identified as necessary for the restructured department.  The defendant claims that if any portion of the functions corresponding to a particular position were obsolete, Drazetic and Ferguson recommended to Tallman that Roadway terminate the particular position and redistribute any remaining functions among other positions.  Roadway ultimately eliminated approximately 18 positions from the marketing department.  In doing so, Roadway terminated 14 employees who were over the age of 40, including Plaintiffs Reminder, Shelton, and Campanale.

During the review of the marketing department, Tallman allegedly performed his own assessment of the sales department.  The defendant claims Tallman sought to increase efficiency within the department by evaluating whether certain positions could be eliminated and the respective job functions reassigned to others.  He apparently, however, did not consult the types of outside sources that Drazetic and Ferguson claimed they looked to for information about which functions would be most useful in the restructured environment.  Nevertheless, Roadway eliminated approximately 4 positions from the sales department.  Those employees were all over the age of 40,

-4-

Case No. 5:04-cv-02581
Gwin, J.

including Plaintiff Nowakowski.

Prior to the reduction in force, the plaintiffs worked for Roadway for varying periods of time. Each received pay increases and promotions during these periods, and the defendant admits that the plaintiffs performed well. Indeed, in all of their years working for Roadway, none of the plaintiffs ever received any formal discipline or reprimand.

Plaintiff Nowakowski worked for Roadway the longest of the four plaintiffs. Roadway hired Nowakowski on March 29, 1976. At the time of his termination, on November 26, 2003, he was 50 years old. He worked as the Director of Third Party Logistics or Manager of Third Party Business Development within the AGO sales department. After Nowakowski was fired, George Kudlacik, an Assistant Vice President, took over the job functions surviving the elimination of Nowakowski's position. Mr. Kudlacik was 54 years old and held a position senior to Nowakowski's. Roadway maintains that it fired Nowakowski because Tallman believed Kudlacik performed similar work and had the capacity to take over any additional responsibilities that had belonged to Nowakowski.

Unlike Nowakowski, the other three plaintiffs worked in Roadway's marketing department. Plaintiff Campanale began working for Roadway on October 19, 1980. Roadway terminated him on September 29, 2003. At that time, Campanale was the Manager of E-Commerce and was 45 years old. Campanale worked in the Product Marketing Group of the marketing department. Among other functions, he managed e-commerce products and internal customer service voice systems. He also provided support for various intranet, extranet, and wireless programs.

During the restructuring, Roadway eliminated Campanale's position as well as the entire Product Marketing Group. For that decision, the defendant relies upon Drazetic and Ferguson's

Case No. 5:04-cv-02581
Gwin, J.

recommendations that the functions of that group could be shifted to other positions. After

Campanale's termination, the Supply Chain Manager in the restructured marketing department,

Brian Krejsa, took over all of Campanale's management and support functions. Krejsa was 30 years

old at that time.

Plaintiff Reminder also worked in the marketing department and was 42 years old when

Roadway terminated him on September 29, 2003. He began working for Roadway on August 2,

1993. By 2003, he held the position of Manager of Marketing Communications. His principal

responsibility involved managing marketing communications for the Market Product Development

Group. This included handling advertising through Roadway's Direct Marketing Program, live-

event advertising, and sponsorship and trade show marketing. Roadways claims they eliminated

Reminder's positions and transferred his responsibilities to at least four other positions.

Specifically, Roadway says the Market Communications Department took over the trade show

marketing functions. The Manager of Communications took over management of the Direct

Marketing Program. Finally, the Assistant Vice President of Marketing and the Manager of Market

Communications assumed responsibility for the live-event sponsorship and brand management

functions. The plaintiffs identified two of the individuals who took over Reminder's duties as John

Heckman and Mike Lyman. Heckman's age is undisclosed, but Lyman was thirty-five years old at

the time of the restructuring.

The remaining plaintiff, Mark Shelton, began working for Roadway on September 3, 1985.

When Roadway terminated him on September 29, 2003, Shelton was 53 years old. As Director of

Corporate Communications, Shelton was responsible for coordinating advertising and sales support

for the field sales divisions. He also managed internal marketing communications, video production,

-6-

Case No. 5:04-cv-02581
Gwin, J.

sales premium programs, and trade show marketing.  Just as with Plaintiff Reminder, the defendant

maintains that it believed Shelton's responsibilities could be delegated to several other employees.

Therefore, Roadway eliminated Shelton's position.

The defendant claims that it reassigned the bulk of the position's functions, including

Shelton's former support and management duties, to a lower lever Manager of Communications

position.  The Assistant Vice President of Marketing and the Manager of Market Communications

allegedly took over Shelton's advertising and media placement responsibilities.  Finally, Roadway

assigned Shelton's internet and intranet functions to the new Web Master position within the

reorganized marketing department.  The plaintiffs, in contrast, identified only one individual, John

Puglia, as having taken over Shelton's responsibilities.  Puglia was 29 at the time of the transition.

Unlike the other plaintiffs, Shelton claims Roadway terminated him not only due to his age,

but also due to disability.  In August 2003, just prior to the reorganization, Shelton injured his back

while on vacation.  On September 8, 2003, Shelton had back surgery to correct two herniated discs.

Because of the injury, Shelton did not return to work until September 29, 2003.  Roadway fired him

that same day.

Roadway claims that it terminated all of the plaintiffs solely because it decided to eliminate

their positions.  Roadway also says that it did not consider past performance when deciding which

employees to retain because it assumed that all of the employees were performing their jobs

competently.  The plaintiffs contend that the defendant's explanation is pretextual.  They claim that

the defendant's true goal was to rid the company of older management-level employees.

II.      Statistical Evidence of Age Discrimination

Both the plaintiffs and the defendant submitted expert reports regarding the plaintiffs' age

Case No. 5:04-cv-02581
Gwin, J.

discrimination claims.  The reports essentially set forth dueling statistical analyses.  The plaintiffs'

expert, Dr. Richard Steiner, prepared two reports based on termination data obtained from Roadway.

In his initial report, Dr. Steiner performed several statistical analyses of the ages of the employees

terminated from a population of 106 Market and sales department employees whose positions were

either restructured or eliminated during the reorganization.

Dr. Steiner first calculated the termination rates of individuals over the age of 40.  He used

data showing that within the sales department, 4 out of 52 employees were terminated, all of whom

were 40 or older.  In the marketing department, 18 of 54 employees were terminated, 14 of whom

were 40 or older.  Employing the Mantel-Haenszel test, Dr. Steiner compared the actual termination

rates for each group to the termination rates that one would expect had the employees been

discharged randomly.  The test yielded a chi-square value of 3.5435 and a p-value of 0.0598.[4]

According to Dr. Steiner, this data indicates that there is less than a 6 percent chance that "as

extreme a pattern of separations within the age groups such as occurred here, would happen if there

was no association between job status and age."[5]  Dr. Steiner also calculated a relative risk estimate

of 2.38, meaning that employees who were forty or older were 2.38 times more likely to be

terminated than  employees under age 40.

Using the same tests, Dr. Steiner then compared the termination rates for employees who

were 50 years of age or older to employees who were under age 50.  This analysis yielded a chi-

square of 8.3573 and a p-value of 0.0038.  This data indicates that there is more than a 99.6 percent

chance that there was an association between age and job status.  Dr. Steiner also calculated a

---

[4] A p-value of 0.05 or lower is generally considered to be significant.

[5] Expert Report of Dr. Steiner 1.

Case No. 5:04-cv-02581
Gwin, J.

relative risk estimate of 2.93, meaning that employees age 50 and over were nearly 3 times as likely to be terminated than employees under the age of 50.

In response to Dr. Steiner's report, the defendant's expert, Dr. Gerald V. Barrett submitted a report of his own statistical analysis of the termination data. The data Barrett used in his analysis differed from the data Steiner used. Specifically, Steiner's report shows 19 marketing department employees, ages 40 and up, who Roadway retained in the restructuring. Barrett's report shows 20. Dr. Barrett used a Fisher's Exact test rather than a Mantel-Haenszel test to analyze the data. He first analyzed that data from the marketing and sales departments separately. His tests yielded a p-value of 0.139 for the marketing department and 1.00 for the sales department. Dr. Barrett claims these results indicate that there is no significant relationship between the age of the employees and their job status. Finally, Dr. Barrett also tested the combined marketing and sales data. This test resulted in a p-value of 0.582, also suggesting no relationship between age and termination.

After learning of the disparities in the data Dr. Barrett used, Dr. Steiner submitted a supplemental report. He argues in this supplemental report that Barrett included two individuals in his analysis that should not have been included because they were neither retained nor terminated, but rather resigned from Roadway prior to the reorganization. In particular, Dr. Barrett listed Matt Farris, age 45, among the employees who Roadway retained, and Michelle Verhelle, age 34, as one of the employees who Roadway terminated. Roadway claims that these employees were included because when deciding how to restructure the marketing department, Ferguson and Drazetic determined that Verhelle's position should be eliminated while Ferguson's position should be retained. In contrast, the plaintiffs argue that these individuals should not be considered in the statistical analysis because their inclusion skews the analysis of the actual termination rate of the

Case No. 5:04-cv-02581
Gwin, J.

employees.  While Dr. Steiner did not include Farris in his initial report, he did include Verhelle,

due to the fact that the data that Roadway supplied had listed her as being terminated.  Therefore,

in his supplemental report, Dr. Steiner retested the termination rates of employees over the age of

40, this time excluding Verhelle from the data set.  He arrived at a p-value of 0.0307, which he

described as demonstrating a significant relationship between termination and age.

III.    Roadway's Severance Policy

        In addition to their employment discrimination claims, the plaintiffs also allege that the

defendant offered them severance packages that were inconsistent with Roadway's policy and

practice regarding severance benefits.  Roadway claims that it offered each of the plaintiffs a

severance payment in accordance with Roadway's written severance policy.  The plaintiffs do not

dispute this, but argue instead that Roadway had in the past offered substantially larger severance

benefits to other employees.

        The defendant maintains that even if this is true, Roadway is still entitled to summary

judgment because it acted in accordance with its severance policy and because the plaintiffs did not

actually have an expectation of receiving greater benefits.  Though the plaintiffs responded to the

defendant's motion for summary judgment, they did not address their claims regarding the severance

policy.

**<u>LEGAL STANDARD</u>**

        Summary Judgment is appropriate where the evidence submitted shows that "there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  The Court enters summary judgment "against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and

-10-

Case No. 5:04-cv-02581
Gwin, J.

on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  The moving party always bears the initial responsibility of informing the district court

of the basis for its motion, and identifying those portions of the record that show the absence of a

genuine issue of material fact.  *Id.* at 323.  A fact is material if its resolution will affect the outcome

of the lawsuit.  *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson*

*v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party

who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477

U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-moving party cannot avoid summary judgment

by resting on its pleadings or reasserting its previous allegations.  It is insufficient "simply [to] show

that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, Rule 56(e) "requires the nonmoving party to go

beyond the pleadings" and present evidentiary material in support of its position.  *Celotex*, 477 U.S.

at 324.

In deciding a motion for summary judgment, the Court views the factual evidence and draws

reasonable inferences in favor of the non-moving party.  *National Enters., Inc. v. Smith*, 114 F.3d

561, 563 (6th Cir. 1997).  The Court must decide "whether the evidence presents sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law."  *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996)

(internal punctuation omitted).   "The mere existence of a scintilla of evidence in support of a

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (citation

Case No. 5:04-cv-02581
Gwin, J.

and internal punctuation omitted).  The Court "is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

I.      Motion to Exclude Expert Witness

The plaintiffs rely heavily on the expert opinion of Dr. Steiner in support of their age discrimination claims.  Therefore, prior to ruling on the defendant's motion for summary judgment, the Court must first address the defendant's motion to exclude the expert testimony and report of Dr. Steiner.  In this motion, the defendant argues that Dr. Steiner's report and testimony fail to comply with Federal Rule of Evidence 702 and the standards outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Because Dr. Steiner's testimony is not so unfounded or speculative as to merit exclusion, the Court denies defendant's motion to exclude.

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. That rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In *Daubert*, the United States Supreme Court stated that district courts should read Rule 702 in the context of the "liberal thrust" of the Federal Rules and interpret it consistently with the "general approach of relaxing the traditional barriers to 'opinion' testimony."  509 U.S. at 588 (citations omitted).

-12-

Case No. 5:04-cv-02581
Gwin, J.

In its role as gatekeeper, the district court must determine the relevance and reliability of all evidence. *Id.* at 589; *United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997). The Supreme Court suggested a non-exclusive list of factors district courts can consider in determining the admissibility of scientific testimony. These factors include consideration of whether the expert's theory or technique: (1) is generally accepted in the scientific community; (2) can be and has been tested; (3) has been subject to peer review and publication; and (4) has a known or potential rate of error. *Daubert*, 509 U.S. at 593-94.

The defendant argues that Dr. Steiner's report and testimony fail to comply with this standard. Roadway raises several objections, the first of which is essentially that Dr. Steiner lacked sufficient knowledge of the reduction in force. Pointing to Dr. Steiner's deposition testimony, Roadway claims that Steiner did not review the plaintiffs' own deposition testimony and did not ascertain who actually made the decisions regarding which employees or positions to terminate or how the decisions were made. However, the Court finds that Dr. Steiner operated under the impression that the same individual or group of individuals made the decisions as to terminations. Moreover, the defendant's own description of the reduction in force shows that impression to be accurate.

Roadway also claims that Dr. Steiner's report is unreliable because the analysis does not prove causation and does not consider alternative explanations or variables that may have contributed to the alleged association between age and rate of termination. Roadway is free to refute Dr. Steiner's testimony by showing that his calculations are incorrect or that the underlying data or assumptions are suspect. Alternatively, Roadway can also set forth valid non-discriminatory explanations for why Dr. Steiner's analysis showed a statistically significant relationship between

-13-

Case No. 5:04-cv-02581
Gwin, J.

age and rate of termination.  However, the mere fact that Dr. Steiner did not consider the myriad of possible variables that may have caused this relationship does not weaken his analysis.  Dr. Steiner sufficiently bases his analysis on the reduction in force data that Roadway provided to the plaintiffs. His report makes clear that the analysis relates only to the probability that the termination rates of employees in certain age groupings were not a result of chance.  The Sixth Circuit has recognized similar statistical analyses in employment discrimination cases.  *See Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990).

The defendant also attacks Dr. Steiner's analytical method and statistical conclusions.  First, Roadway claims that Dr. Steiner's report disregard's the generally accepted standard with regard to a p-value's indication of statistical significance.  *See Ford v. Seabold*, 841 F.2d 677, 684, n.5 (6th Cir. 1988) ("a probability value below 0.05 is generally considered to be statistically significant, i.e., when there is less than a 5% probability that the disparity was due to chance.") (internal quotations omitted).

Notably, both Dr. Steiner's initial calculations regarding the 50 and over age group and his supplemental analysis regarding the 40 and over age group arrived at p-values well below the 0.05 standard.  Thus, the defendant's objection relates only to Dr. Steiner's statements relating to his initial analysis of the 40 and over age group.  As discussed above, though this analysis yielded a p-value of 0.0598.  Steiner believed this value to be close enough to the standard for significance to justify his conclusion that the results showed a relationship between age and termination.

The defendant argues that under the generally accepted standard for significance, Dr. Steiner's conclusion is false.  The Court finds, however, that Dr. Steiner's willingness to stray somewhat from the standard does not make his report so unreliable as to warrant exclusion.

-14-

Case No. 5:04-cv-02581
Gwin, J.

Moreover, as Dr. Steiner states in his supplemental report, he believed that his initial analysis of the 40 and over age group was skewed by the improper inclusion of Verhelle as one of the terminated employees. Dr. Steiner's amended analysis did yield a p-value below 0.05. Roadway argues that the Dr. Steiner's supplemental report is misleading. It claims that because Drazetic and Ferguson allegedly decided to eliminate Verhelle's position, she should be counted as one of the terminated employees. This argument relates less to the reliability of the statistical analysis, and more to the parties' disagreement as to whether the reduction in force focused on eliminating certain positions or eliminating certain employees. As such, it does not weigh on the admissibility of the evidence. *See McCabe v. Champion Intern. Corp.*, 916 F.2d 713, 1990 WL 156104, **5 (6th Cir. 1990) (citing *Barnes*, 896 F.2d at 1467, for the proposition that "theoretical objections" to similar statistical testing "will not suffice to prove that an exhibit could not be reasonably relied on to prove discrimination").

Finally, Roadway also claims that Dr. Steiner should have converted the resultant p-values into standard deviation measures and included confidence intervals for his relative risk estimates in his report. Again, these objections speak to the strength of Dr. Steiner's testimony, but do not warrant the its exclusion. The Court thus denies the defendant's motion to exclude the expert testimony and reports of Dr. Steiner.

II.     Age Discrimination Claims

In their response to the defendant's motion of summary judgment, the plaintiffs assert two theories of discrimination–disparate treatment and alternatively disparate impact.[6] The Court

---

[6] The plaintiffs bring their age discrimination claims under both the ADEA and section 4112.02 of the Ohio Revised Code. *See* OHIO REV. CODE § 4112.02 (2001). For age discrimination claims, Ohio courts follow the federal
(continued...)

-15-

Case No. 5:04-cv-02581
Gwin, J.

addresses each theory below.

A.      *Disparate Treatment*

Under the ADEA it is unlawful for an employer to discharge or fail to hire any individual 40 years of age and older or otherwise discriminate against that person with respect to compensation, terms, conditions, or privileges of employment "because of such individual's age."  29 U.S.C. § 623(a).  An employer can violate the ADEA when it prefers a younger employee, even if that younger employee is within the protected class of workers aged 40 and over.  *Barnes*, 896 F.2d at 1466; *see also O'Conner v. Consolidated Coin Caterer's Corp.*, 517 U.S. 308, 312 (1996).

Where a plaintiff gives no direct evidence of age discrimination, he must make the showing described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Blackwell v. Sun Elec. Co.*, 696 F.2d 1176, 1180 (6th Cir. 1983) (courts should allocate burden of proof in ADEA case according to McDonnell Douglas-Burdine analysis the Supreme Court adopted for Title VII cases).

Under the McDonnell Douglas paradigm, a plaintiff establishes a prima facie case of age discrimination by showing: 1) that he is a member of a protected group; 2) that he was subject to an adverse employment decision; 3) that he was qualified for the position; and 4) that he was replaced by a younger person.  *Skala v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir. 1999).

---

[6]/(...continued)

guidelines and requirements.  *See, e.g., Ahern v. Ameritech Corp.*, 137 Ohio App. 3d 754, 769, 739 N.E.2d 1184, 1194 (2000) ("The Ohio Supreme Court has held that age discrimination cases brought in state courts should be construed and decided in accordance with the federal guidelines and requirements.");  *Barker v. Scoville, Inc.*, 6 Ohio St. 3d 146, 147–48, 451 N.E.2d 807, 808–09 (1983) (applying the framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to an age discrimination claim under Ohio law), modified, *Kohmescher v. Kroger Co.*, 61 Ohio St. 3d 501, 575 N.E.2d 439 (1991).  Therefore, the Court's analysis with regard to the plaintiffs' federal age discrimination claims applies as well to the plaintiffs' § 4112.02 claims.

-16-

Case No. 5:04-cv-02581
Gwin, J.

In the context of a reduction in force, the fourth element is modified because the employee is not actually replaced.  *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999). Instead, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Id.* (quoting *Barnes*, 896 F.2d at 1465).  This "extra" evidence must be "sufficiently probative" to permit the fact finder to believe the defendant intentionally discriminated against the worker based on age.  *Barnes*, 896 F.2d at 1466.

If the plaintiff makes out a prima facie case, the burden shifts to the employer to describe a legitimate, nondiscriminatory reason for the employment action.  *McDonnell Douglas*, 411 U.S. at 802-03; *Barnes*, 896 F.2d at 1466.  If the employer gives a legitimate, nondiscriminatory reason for the employment action then the employee must show the employer's stated reason is pretextual. *McDonnell Douglas*, 411 U.S. at 802-03; *Godfredson*, 173 F.3d at 371.

 1.     *Prima facie Case*

The defendant does not contest the first three elements of the plaintiffs' prima facie case. Instead, the defendant focuses on the fourth element, arguing that the plaintiffs' statistical evidence of discrimination is not sufficiently probative to establish a prima facie case of discrimination.  The defendant makes many of the same arguments here as it did in its motion to exclude Dr. Steiner's testimony.  Thus, Roadway argues again that Dr. Steiner's analysis is not sufficiently probative of discrimination because it fails to account for alternative factors that may be probative of the defendant's decision to terminate certain employees.  The defendant cites Ohio case law supporting this assertion.  *See Boggs v. The Scotts Co.*, 2005-Ohio-1264, 2005 WL 647560, *6 (Ohio Ct. App. 2005) (stating that "unelaborated statistics that fail to consider independent variables such as job

-17-

Case No. 5:04-cv-02581
Gwin, J.

skills, education, experience, performance or self-selection, were insufficient to establish a material

issue of fact").

However, as discussed above, the Sixth Circuit has found that statistics similar to those that

the plaintiffs present here are probative of discrimination.  *See Barnes*, 896 F.2d at 1466-67.  In

*Barnes*, the Sixth Circuit stated:

> When a plaintiff's statistics indicate a disproportionate discharge rate for a protected
> group there are three possible explanations for the discrepancy: the operation of
> legitimate selection criteria, chance, or the defendant's bias.  When a plaintiff
> demonstrates a significant statistical disparity in the discharge rate, he or she has
> provided strong evidence that chance alone is not the cause of the discharge pattern.
> The statistics do not and cannot determine whether the more likely cause is the
> defendant's bias or a legitimate selection criterion.  We allow a plaintiff to establish
> a prima facie case without providing additional evidence that bias is the more likely
> cause of the discharge than legitimate explanations because we assume, absent some
> reason to believe the opposite is true, that job skills will be equally distributed across
> all age groups.

896 F.2d at 1468-69 (internal citations omitted).  Clearly, the plaintiffs are not required to present

statistical evidence accounting for every possible factor that led to their termination.  Dr. Steiner's

analysis demonstrates a significant relationship between age and rate of termination, "providing

strong evidence that chance alone is not the cause of the discharge pattern."  *Id.*

The defendant also argues that Dr. Steiner's calculations are misleading due to his failure

to include Farris and Verhelle in his data set.  The plaintiffs maintain that these individuals should

not be included as both resigned prior to the reorganization.  The defendant, on the other hand,

argues that because Roadway considered Ferris and Verhelle's positions while planning the

reorganization, they must be included.  This argument does little more than highlight that material

questions of fact remain with regard to a core aspect of the plaintiffs' claims.  Roadway attempts to

argue that it did not engage in age discrimination because it merely eliminated positions, not

-18-

Case No. 5:04-cv-02581
Gwin, J.

employees.  Yet, at the same time, it admits that it also considered the qualifications of the employees.[7/]

The plaintiffs argue, based in part on the defendant's own inconsistencies, that Roadway did make determinations as to specific employees, and moreover, that it did so on the basis of age. Roadway may have initially decided to eliminate a certain position and keep another.  Dr. Steiner's ultimate focus, however, was whether the group of individuals who Roadway ultimately retained to fill the restructured positions was significantly younger than the group of employees who were terminated.  Using Roadway's own explanation, if the determination of what employees were fired was related to the position they held, the appropriate measure would be taken after the reorganization was completed.

The plaintiffs' statistical evidence alone is sufficiently probative to establish a prima facie case.  The Court notes, however, that the plaintiffs provide additional circumstantial evidence of discrimination.  First, the plaintiffs point to a meeting between Tallman, Drazetic, Ferguson, and Jack Peak, Roadway's in house legal counsel.  During the meeting, those individuals allegedly discussed the ages of the employees involved in the reorganization.[8/]  Additionally, the plaintiffs point to Roadway's retention of employee Barry Jackson, who was 39 at the time of the reorganization.  In his deposition testimony, Ferguson described Jackson's past performance as less than exemplary, citing a particular marketing project that Jackson had managed poorly.[9/]  Roadway claims that it did not consider past performance in deciding which employees to retain because its

---

[7/] *See* Tallman dep. 62:23, 74-75, Sept. 9, 2005.

[8/] *See id.* at 164-175.

[9/] *See* Ferguson dep. 37-45, 52, 76, 207, Sept. 8, 2005.

-19-

Case No. 5:04-cv-02581
Gwin, J.

focus was on eliminating positions rather than employees.  This, however, conflicts with Tallman's

statement that he, Drazetic, and Ferguson considered the qualifications and experience of all of the

employees.

       *2.*        *Defendant's reason for the Terminations*

Because the Court finds that the above-described evidence is sufficient to establish a prima

facie case of discrimination, the burden shifts to Roadway to set forth a legitimate,

nondiscriminatory reason for terminating the plaintiffs.  Roadway argues that it intended to increase

efficiency by streamlining the corporate sales and marketing departments.  In other words, they

reduced the number of employees, or positions, in each department and redistributed job functions

among the remaining employees.

Even accepting these assertions as true, they do nothing more than give a basic description

of just about any reduction in force.  What these assertions do not explain is why Roadway chose

to eliminate a particular position *as opposed to* another.  Additionally, the Court finds that

Roadway's reduction in force was not as simple as a standard layoff, where perhaps the numbers of

various positions are reduced and the employees remaining in those positions takeover the extra

work.  As Roadway admits, it not only reduced the number of employees in the marketing and sales

department, but completely restructured those departments, creating in many cases new positions

with redesigned job descriptions.  Thus even though Roadway contends that it was eliminating

positions rather than people, it was at the same time choosing certain people over others to fill the

redesigned positions in the newly restructured departments.

Ignoring this fact, Roadway also neglects to provide any evidence or explanation as to why

certain employees were chosen to continue on with Roadway, while others were terminated.

-20-

Case No. 5:04-cv-02581
Gwin, J.

Tallman claims that Drazetic, Ferguson, and he considered the qualifications and experience that the redesigned positions would require. But Roadway does not suggest that the people it chose to retain, the people who took over the plaintiffs' former responsibilities, had any unique qualifications or experience that made them better candidates to retain. Nor does Roadway argue that the plaintiffs somehow lacked the skills required to perform well in the restructured environment.

     *3.*       *Pretext*

Even if Roadway had asserted legitimate reasons for the terminations, the Court finds that Plaintiffs Reminder, Shelton, and Campanale present sufficient evidence of pretext. To show pretext, the plaintiffs must demonstrate that Roadway's reasons (1) have no basis in fact, (2) did not actually motivate the discharge, or (3) were insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

At the outset, the Court notes that Plaintiff Nowakowski's claim must fail. With regard to Nowakowski, the defendant points out that Kudlacik, who took over Nowakowski's duties, was both older and superior to Nowakowski. While the circumstantial evidence that the plaintiffs rely on was enough to establish a prima facie case, Nowakowski cannot point to enough evidence specifically relating to his termination to support the inference that it was motivated by age bias.

As described above, Plaintiffs Reminder, Shelton, and Campanale each presented evidence that Roadway transferred their responsibilities to other substantially younger employees. Additionally, they point to evidence casting doubt on Roadway's description of the process it undertook to effect the reorganization of the marketing department. Roadway contends that it terminated the plaintiffs simply because it decided to eliminate their positions and shift their duties to other employees. Thus, Roadway essentially suggests that the very fact that it engaged in a

-21-

Case No. 5:04-cv-02581
Gwin, J.

reduction in force sufficiently shields it from a claim of discrimination.  The Court recognizes that plaintiffs carry a heavier burden in cases involving a reduction in force.  However, that elevated burden does not equate to quasi-immunity for employers who claim that they were simply seeking to streamline their work force.  As the Sixth Circuit noted in *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003), "[a]n employer's business judgment, however, is not an absolute defense to unlawful discrimination."  Moreover, "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation."  *Id.*

The Court may, for instance, consider Roadway's failure to come forward with a plausible explanation of why they chose to terminate certain employees rather than others as evidence of pretext.  Roadway repeatedly argues that it carefully examined the job functions that were critical to the reorganized marketing and sales departments and sought to reconfigure job descriptions to best cover these functions.  However, the Court finds little evidence of this.  For example, Roadway submitted numerous slides from presentations that Drazetic and Ferguson gave regarding the reorganization.  However, the slides show only general information regarding possible plans for restructuring the marketing department.  Moreover, the plaintiffs point out that Roadway did not actually formulate job descriptions for many of the redesigned positions until well after the reorganization took place.  It is difficult to understand how Roadway could have done a studied comparison of all of the employees qualifications and job functions with the required qualifications and functions corresponding to the new positions without having first developed job descriptions for those positions.

Even more suspect, as discussed above, is Roadway's failure to provide any evidence that

-22-

Case No. 5:04-cv-02581
Gwin, J.

the employees it retained to ultimately take over the plaintiffs' duties were more qualified than the plaintiffs or had specific qualifications required for the redesigned positions.  The Court specifically requested such information after reviewing the parties briefs, and Roadway elected not to respond.  Instead, Roadway seems to suggest that because it was merely eliminating positions, the relative qualifications of the employees is irrelevant.  This is not only illogical, but also contradictory to the testimony of Roadway's own agent.  As described above, Tallman, the individual charged with oversight of the reorganization, claims that Drazetic, Ferguson, and he did consider the qualifications of the employees when deciding who they should terminate.

The Sixth Circuit has found such inconsistencies to be evidence of pretext.  *See Cichewicz v. UNOVA Indus. Automotive Systems, Inc.*, 92 Fed. Appx. 215, 220 (6th Cir. 2004) ("evidence of pretext may consist of a defendant's changing explanations); *Fox v. Certainteed Corp.*, 198 F.3d 245, 1999 WL 1111495, at *5 (6th Cir. 1999) (noting that evidence demonstrating inconsistency in the employer's explanations for the plaintiff's discharge may raise an inference of pretext); *see also Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir.1994) ("identification of inconsistencies in the defendant's testimony is evidence of pretext"); *Lent v. Goldman Sachs & Company*, No. 97 CIV. 9413(SAS), 1998 WL 915906, at *8 (S.D.N.Y. 1998) ("[w]hat defendant calls 'minor inconsistencies' may be evidence of pretext").

Consistent with this principle, the Court finds that the plaintiffs have pointed to sufficient evidence tending to show a genuine issue of fact remains as to Roadway's motivation in terminating the plaintiffs.  While Roadway claims that it terminated the plaintiffs during a standard reduction in force, its own arguments illuminate material discrepancies.  Like a white elephant in the corner of a room, these discrepancies loom over the defendant's explanation of its allegedly legitimate,

-23-

Case No. 5:04-cv-02581
Gwin, J.

nondiscriminatory reasons for terminating the plaintiffs.  In the face of such shadowy logic, the

Court must deny the defendant's motion for summary judgment as to Plaintiff Reminder, Shelton,

and Campanale's age discrimination claims.

> B.  *Disparate Impact*

The plaintiffs alternatively advance a disparate impact theory of their age discrimination

claims.  The Court finds, however, that the plaintiffs' amended complaint fails to state such a claim.

The general structure of a claim of age discrimination based on disparate impact theory is

similar to a disparate treatment claim.  *See Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 872 (6th Cir.

1990).  The theories differ in the showing that a plaintiff must make to establish a prima facie case.

In a disparate treatment case, a plaintiff must present evidence, whether direct or circumstantial,

sufficient to establish an inference of discriminatory intent.  Under a disparate impact theory of

discrimination, the plaintiff need not prove intent, but must demonstrate the "existence of an

employment practice which, although neutral on its face, has the effect of disproportionately

affecting persons in a legally protected group."  *Id.* at 872.

In the plaintiffs' amended complaint, they describe their age discrimination claim by stating

that "[a]ge was a factor in the decision by Defendant to terminate Plaintiffs' employment in violation

of ADEA and the Ohio Revised Code."[10]  Clearly, the plaintiffs state a disparate treatment claim,

in that they allege that the defendant terminated them on the basis of age.  The plaintiffs do not, in

contrast, allege that the defendant's reduction in force was a neutral practice that merely resulted

in a disproportional number of older employees being terminated.  The Court thus finds that the

plaintiffs have not plead a disparate impact claim.

---

[10] Am. Compl. ¶ 34.

Case No. 5:04-cv-02581
Gwin, J.

III.     Disability Discrimination

Aside from their age discrimination claims, the plaintiffs allege that Roadway committed disability discrimination in violation of Title I of the ADA and Ohio Rev. Code § 4112.02.[11] Specifically, the plaintiffs claim that Roadway terminated Plaintiff Shelton due to his back injuries. The defendant argues that Plaintiff Shelton cannot establish a prima facie of disability discrimination, as Shelton cannot prove that he was disabled under the ADA and cannot prove that Roadway terminated Shelton based on his alleged disability. The plaintiffs do not respond to the defendant's motion for summary judgment on this claim. If the nonmoving party does not "set forth facts showing that there is a genuine issue for trial, . . . summary judgment, if appropriate, will be entered against the adverse party." Fed. R. Civ. P. 56(e).

To establish a prima facie case of disability discrimination, the plaintiff must prove that (1) he is disabled, (2) he is otherwise qualified to perform his job with or without a reasonable accommodation, and (3) the defendant took an adverse employment action against him based on the disability. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); *see also Gourgy v. Metro Nashville Airport Auth.*, 61 Fed. Appx. 958, 959 (6th Cir. 2003).

If the plaintiff succeeds in making a prima facie case of discrimination, the burden shifts to the defendant to present a legitimate nondiscriminatory reason for the adverse employment action. If the defendant carries that burden of production, the plaintiff then bears the burden of persuasion to demonstrate that the defendant's proffered reasons were pretext for discrimination. *Gourgy*, 61

---

[11] The Court addresses the plaintiffs' federal disability claim only, as the same analysis applies to the plaintiffs' state law claim. *See Sebest v. Campbell City Sch. Dist.*, 94 Fed. Appx. 320, 327 n.8 (6th Cir. 2004) ("Our decision on [the plaintiff's] ADA claim is also dispositive of his [Ohio Rev. Code § 4112.02] disability claim."); *Lockard v. General Motors Corp.*, 52 Fed. Appx. 782, 785 n.2 (6th Cir. 2002) ("This court's ruling with respect to [the plaintiff's] ADA claim also disposes of her claim of disability discrimination under Ohio law.")

Case No. 5:04-cv-02581
Gwin, J.

Fed. Appx. at 959 (citing *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 883 (6th Cir. 1996). *See also*

*Blanton v. Cuyahoga Cty. Bd. of Elecs.*, 779 N.E.2d 788, 792-93 (Ohio Ct. App. 2002) (applying

same standard under Ohio Rev. Code § 4112.02(A)).

The defendant first argues that Plaintiff Shelton is not disabled within the meaning of the

ADA.  To qualify as disabled under the ADA, the plaintiff must (1) have a physical or mental

impairment that substantially limits her in at least one major life activity, (2) have a record of such

an impairment, or (3) be regarded as having such an impairment.   42 U.S.C. § 12102(2).  The

United States Supreme Court defines "major life activities" as those "activities that are of central

importance to daily life." *Toyota Motor Mfg. Co. v. Williams*, 534 U.S. 184, 196 (2002).  Moreover,

an impairment that "only moderately or intermittently prevents an individual from performing major

life activities is not a substantial limitation under the Act." *Mahon v. Crowell*, 295 F.3d 585, 590-91

(6th Cir. 2002).

In the present case, Shelton alleges that he is disabled due to a back injury resulting in a

herniated disc.  On September 8, 2003, Shelton underwent surgery to correct this injury.  His

physician allegedly released him to return to work by September 29, 2003.  The only restriction the

physician placed on Shelton's activity was that he was not supposed to lift more than thirty-five

pounds.  Additionally, the defendant provided evidence that in January 2004, when Shelton applied

for a job with First Merit Bank, he assured First Merit that he was not impaired in any major life

activities and did not consider himself disabled.[12]

In the past, the Sixth Circuit has found that similar injuries do not amount to a disability

within the meaning of the ADA. *See Law v. City of Scottsville*, No. 98-6335, 2000 WL 799742, **4

---

[12] Shelton dep. 160, May 27, 2005.

Case No. 5:04-cv-02581
Gwin, J.

(6th Cir. 2000) (recognizing that "the weight of federal case law . . . indicates that maximum weight restrictions are not disabilities"); *McKay v. Toyota Motor Mfg. U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir.1997) (holding that the plaintiff's inability to engage in "frequent lifting of more than ten pounds ... would not significantly restrict her ability to perform a broad range of jobs in various classes"). For example, in *Law*, 2000 WL 799742, at **1, the Sixth Circuit found that a plaintiff who, because of a back injury, was restricted from "repetitive bending, lifting, and stooping and lifting more than 40 pounds" was not disabled.

In the present case, Shelton does not allege that his inability to lift more than 35 pounds affected his ability to perform his job responsibilities. Nor, does Shelton allege any other limitation resulting from his back injury. The Court thus finds that his injury does not substantially limit any major life activity. Accordingly, Shelton cannot show that he is disabled within the meaning of the ADA.

Moreover, even if Plaintiff Shelton's back injury did qualify as a disability, Shelton presents no evidence to show that Roadway terminated him due to his disability. As such, the Court grants Defendant Roadway's motion for summary judgment as to Plaintiff Shelton's claim of disability discrimination.

IV.     Claims Related to Roadway's Settlement Policy

Having dealt with the plaintiffs' employment discrimination claims, the Court now turns to the plaintiffs' allegation that Roadway offered them smaller severance policies than it offered to others at the time of the reduction in force. The plaintiffs claim alternatively that this violates ERISA or gives rise to a cause of action in quasi-contract. The defendant argues it is entitled to summary judgment on these claims. First, the defendant asserts that it offered the plaintiffs the full

Case No. 5:04-cv-02581
Gwin, J.

benefits mandated by Roadway's severance policy, thus precluding recovery under ERISA.  The

defendant next argues that the plaintiffs cannot state a claim in quasi-contract because ERISA

preempts such a claim and because the plaintiffs cannot show that they had an expectation of

receiving greater benefits.  The plaintiffs did not respond to the defendant's motion for summary

judgment on these claims.

>        *A.        ERISA Claim*

In the present case, the plaintiffs admit that Roadway offered them all of the benefits they

were entitled to receive in accordance with Roadway's severance policy.[13]  They claim however,

that Roadway violated ERISA by allegedly offering other employees higher severance packages.

Responding, the defendant argues that the plaintiffs are not entitled to receive any benefits other than

those outlined in the plan, regardless of what Roadway offered other employees.

The plaintiffs did not indicate in their complaint, nor otherwise clarify, the exact provision

of ERISA under which they bring their claims.  However, it appears the plaintiffs attempt to bring

a claim under § 510 of ERISA, 29 U.S.C. § 1140, the anti-discrimination provision of the act.  Even

assuming that Roadway's severance policy qualifies as an ERISA plan, the Court finds that the

plaintiffs cannot state a claim for relief under ERISA.

The Sixth Circuit has previously clarified that § 510 is "aimed primarily at preventing

unscrupulous employers from discharging or harassing their employees in order to keep them from

obtaining vested pension rights."  *Mattei v. Mattei*, 126 F.3d 794, 798 (6th Cir. 1997) (quoting *West

v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980)).  "By its terms § 510 protects plan participants from

termination motivated by an employer's desire to prevent a pension from vesting. Congress viewed

---

[13] *See* Am. Compl. ¶¶ 23-24.

Case No. 5:04-cv-02581
Gwin, J.

this section as a crucial part of ERISA because, without it, employers would be able to circumvent

the provision of promised benefits." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143 (1990).

In order to prevail under § 510, an employee must "'show that the alleged discrimination was

designed either to retaliate for the exercise of a right or to interfere with the attainment of an entitled

right. It is insufficient merely to allege discrimination in the apportionment of benefits under the

terms of the plan.'" *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 509 (quoting *Owens v.

Storehouse, Inc*., 984 F.2d 394, 398 (11th Cir.1993)).

In the present case, the plaintiffs do not content that they were denied benefits in violation

of ERISA.  In fact, they admit that Roadway offered them the full benefits they were entitled to

receive under the severance policy.  Under the standards set forth above, the plaintiffs cannot state

a claim under § 510 simply by alleging that Roadway offered other employees more comprehensive

severance benefits.  Nor do the plaintiffs "'have a right to treatment that is contrary to the terms of

the plan, even if those terms are breached for others.'" *Coomer*, 370 F.3d at 510 (quoting *McGath

v. Auto-Body North Shore*, 7 F.3d 665, 670 (7th Cir. 1993).  Accordingly, the Court grants summary

judgment as to the plaintiffs' ERISA claims.

*B.      Breach of Quasi-Contract*

The plaintiffs argue in the alternative that Roadway breached a quasi-contractual relationship

with the plaintiffs by offering them severance packages that were inconsistent with those offered to

other employees.  The defendant argues that ERISA preempts the plaintiffs' quasi-contract claims

and that, in any case, the plaintiffs cannot demonstrate that they expected to receive greater benefits

than those provided for in the severance policy.

As the Sixth Circuit repeatedly recognizes, ERISA preempts "virtually all state law claims

-29-

Case No. 5:04-cv-02581
Gwin, J.

relating to an employee benefit plan." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272,

1276 (6th Cir. 1991).  Moreover, "[t]he phrase 'relate to' is given broad meaning such that a state

law cause of action is preempted if 'it has connection with or reference to that plan.'" *Id.* at 1275-76

(quoting *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 730 (1985)).  This includes contractual

or quasi-contractual claims such as the one advanced in the present case.  *See Pilot Life Ins. Co. v.*

*Dedeaux*, 481 U.S. 41 (1987) (holding that a Mississippi common law creating a cause of action for

bad-faith breach of contract that was not specifically directed to the insurance industry was subject

to ERISA preemption); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987) (holding that

the plaintiff's "common law contract and tort claims [were] pre-empted by ERISA").  Thus, to the

extent that Roadway's severance policy is an ERISA plan, the plaintiffs' claims for breach of quasi-

contract in relation to that policy are preempted.

Additionally, even if ERISA does not preempt the plaintiffs' claims, the Court finds that the

plaintiffs cannot prove the existence of a quasi-contract.  To maintain a cause of action for breach

of quasi-contract under Ohio law, the plaintiff must allege: (1) a benefit conferred by a plaintiff upon

a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the

defendant under circumstances where it would be unjust to do so without payment.  *R.J. Wildner*

*Contracting Co., Inc. v. Ohio Turnpike Comm'n*, 913 F. Supp. 1031, 1042 (N.D. Ohio 1996);

*Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984) (per curiam).

Ohio Courts consider the retention of benefits to be unjust, when the plaintiff demonstrates a

reasonable expectation of compensation.  *See Martin v. Ohio Citizens Bank*, No. L-98-1218, 1999

WL 435469, at *4 (Ohio Ct. App. 1999).

The plaintiffs testified in the present case that they were unaware of Roadway's severance

-30-

Case No. 5:04-cv-02581
Gwin, J.

policy, and also that no one from Roadway management had ever made any representation to them

regarding Roadway's severance practices.[14/]  In fact, the plaintiffs present no evidence that they had

a reasonable expectation that they would receive any particular benefit package.  They claim only

that Roadway had at other times offered greater severance benefits to employees other than the

plaintiffs.  The Court thus finds that the plaintiffs cannot state a claim for relief under quasi-contract

theory.

### CONCLUSION

Based on the foregoing reasons, the Court **DENIES** the defendant's motion to exclude the

expert testimony and report of Dr. Steiner.  The Court finds additionally that Plaintiffs Reminder,

Shelton, and Campanale present sufficient evidence to create a genuine issue of material fact as to

whether Roadway terminated them due to their ages.  As such, the Court **GRANTS** Defendant's

motion for summary judgment as to the plaintiffs' disability discrimination, ERISA, and state law

breach of contract claims.  Additionally, the Court **GRANTS** Defendant's motion for summary

judgment as to the plaintiffs' disparate impact age discrimination claim and Plaintiff Nowakowski's

disparate treatment claim, but **DENIES** Defendant's motion as to Plaintiff Reminder, Shelton, and

---

[14/] *See* Reminder Dep. 82:23-83:6, June 8, 2005; Shelton Dep. at 93:2-93:10; Nowakowski dep. at 108:9-109:13, May 26, 2005.

Case No. 5:04-cv-02581
Gwin, J.

Campanale's disparate treatment claims.

IT IS SO ORDERED.


Dated: November 1, 2005                    s/            *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE